UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**VENUS STARR BOUVAT,**

    **Plaintiff,**

    v.                                                              Case No. 23-CV-32

**MARTIN J. O'MALLEY,**
**Commissioner of Social Security,**

    **Defendant.**

---

## DECISION AND ORDER

---

Venus Starr Bouvat seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her application for supplemental security income under the Social Security Act, 42 U.S.C. § 405(g). For the reasons explained below, the Commissioner's decision is affirmed, and the case is dismissed.

## BACKGROUND

On July 29, 2020, Bouvat filed an application for supplemental security income, alleging disability beginning on January 2, 2014, due to bipolar disorder; PTSD; anxiety disorder; diabetes; asthma; back problems; shoulder problems; peripheral neuropathy; osteoarthritis of the elbow, wrists, and hands; and osteoarthritis of the shoulder. (Tr. 355.) Bouvat's application was denied initially and upon reconsideration. (Tr. 25.) Bouvat filed a request for a hearing, and a hearing was held on June 9, 2022. (Tr. 45–69.) Bouvat, who was represented by counsel, testified, as did Robert Verkins, a vocational expert ("VE"). (*Id.*) At the hearing, Bouvat moved to amend her alleged onset date to January 29, 2020. (Tr. 49.)

In a written decision issued July 21, 2022, the ALJ found that Bouvat had the severe impairments of left hip labrum tear; trochanteric bursitis; lumbar degenerative disc disease and facet arthropathy; carpal tunnel syndrome; diabetes mellitus; left shoulder rotator cuff tear and tendinosis; osteoarthritis of the knees, hands, left shoulder, and left hip; inflammatory arthritis; peripheral neuropathy; asthma/chronic obstructive pulmonary disease; migraine headaches; and obesity. (Tr. 28.) The ALJ found that Bouvat did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "Listings"). (Tr. 29–31.) The ALJ found that Bouvat had the residual functional capacity ("RFC") to perform light work, with the following limitations: no overhead reaching with the left upper extremity and only frequent hand use; only occasional operation of foot controls with the left lower extremity; no climbing ropes, ladders, and scaffolds; only occasional climbing of ramps and stairs, stooping, crouching, kneeling, and crawling; no concentrated exposure to fumes, dust, and environmental irritants; and no work at unprotected heights or with dangerous machinery. (Tr. 31.)

While Bouvat has no past relevant work, the ALJ found that considering her age, education, work experience, and RFC, other jobs existed in significant numbers in the national economy that she could perform. (Tr. 36–37.) Thus, the ALJ found Bouvat was not disabled since July 29, 2020, the date the application was filed. (Tr. 37.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Bouvat's request for review. (Tr. 7–12.)

## DISCUSSION

### 1. *Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal

standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

### 2. Application to This Case

Bouvat argues the ALJ erred in two ways: (1) by improperly assessing her RFC when limiting her to light work with manipulative and postural restrictions and (2) by failing to develop the record by not obtaining an updated medical opinion after her 2022 left hip surgery. (Pl.'s Br., Docket # 13; Pl.'s Reply Br., Docket # 19.) I will address each argument in turn.

### 2.1 RFC Assessment

The ALJ limited Bouvat, in relevant part, to light work, but with no overhead reaching with the left upper extremity and only frequent hand use. (Tr. 31.)

Bouvat generally questions the limitation to light work, invoking the SSA's Medical–Vocational Guidelines, also known as the "grid," in support. (Pl.'s Br. at 7.) The grid "is a chart which classifies a claimant as disabled or not disabled, based on the claimant's physical capacity, age, education, and work experience." *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987). As of her alleged onset date of January 29, 2020, Bouvat was 48 years old and thus a "younger individual age 18-49" under the regulations. 20 C.F.R. § 416.963(c). The ALJ noted, however, that Bouvat "subsequently changed age category to closely approaching advanced age." (Tr. 36.) The ALJ also noted that Bouvat has marginal education and no past relevant work. (*Id.*) Under the grid, an individual who is closely approaching advanced age, has limited or less education, has no previous work experience, and is capable of *sedentary* work, is deemed disabled. 20 C.F.R. Part 404, Subpart P, App'x 2, § 201.09. The same individual, however, capable of *light* work, is deemed not disabled under the grid. *Id.* § 202.10. In other words, had the ALJ found Bouvat limited to sedentary work rather than light work, she would be considered disabled per the grid.

Light work "requires that a person have the ability to lift up to twenty pounds and the ability to do a good deal of walking or standing." *Allen v. Sullivan*, 977 F.2d 385, 389 (7th Cir. 1992). "Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8 hour workday." *Id.* (quoting Social Security Ruling 83–10, *Titles II and XVI: Determining Capability to Do Other Work—The Medical–Vocational Rules of*

*Appendix 2*). In her Adult Function Report dated September 29, 2020, Bouvat stated that she spends "almost all day" in bed, can stand for approximately 20 minutes, and cannot walk. (Tr. 370.) She testified at the hearing that she has been "pretty much going downhill" since 2020. (Tr. 58.) She stated that she cannot walk from her front door to the end of the block, cannot stand, and spends most of the day either in bed or sitting on a chair. (*Id.*)

The ALJ found that the record evidence was inconsistent with the severity of the symptoms Bouvat alleges, looking specifically at her relatively normal imaging and physical examinations and the opinions of the state agency physicians that she remained capable of performing light work. (Tr. 34–35.) Bouvat's challenge to the ALJ's finding is not entirely clear. She argues that the ALJ failed to address how her hip affects her ability to sit or whether her combined hip and back issues would require further standing limitations. (Pl.'s Br. at 7.) It seems Bouvat's argument is that her hip and back issues would limit her standing such that she is incapable of the requirements of light work, taking her into the sedentary work category, and thus making her disabled under the grid. If that is the case, Bouvat points to no evidence warranting more restrictive limitations in sitting and/or standing that the ALJ failed to consider. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (finding that even if an ALJ's RFC assessment was flawed, the error is harmless if plaintiff fails to articulate what greater restrictions, supported by the evidence, the ALJ failed to assign). Thus, it is unclear how the ALJ erred in this regard.

Bouvat further argues that the ALJ erred by assessing more restrictive postural and manipulative limitations than those opined by the state agency physicians, arguing that the ALJ "offered no non-arbitrary basis for her additional limitations." (Pl.'s Br. at 7.) Both state agency physicians at the initial and reconsideration levels opined Bouvat was capable of light

5

work but restricted her to limited left overhead reaching due to her unrepaired left rotator cuff tear. (Tr. 87–90, 105–09.) The ALJ, however, found the state agency physicians' opinions only somewhat persuasive. (Tr. 35.) Specifically, while she agreed that the evidence supported limiting Bouvat to light work with a restriction regarding overhead reaching with the left arm, the ALJ found that, considering Bouvat's history of left shoulder surgical repair, carpal tunnel syndrome, and neuropathy, Bouvat should be further limited to frequent hand use and *no* overhead reaching with the left upper extremity. (*Id.*) Bouvat argues that these findings are arbitrary. I disagree. The ALJ fully explained why she accorded the weight that she did to the two state agency physicians' opinions and why she was assessing more restrictive limitations. Even assuming, however, that the ALJ's limitations were indeed "arbitrary," once again, Bouvat fails to explain how the ALJ's more restrictive RFC fails to account for her limitations. Thus, the ALJ did not err in this regard.

### 2.2 Failure to Develop the Record

Bouvat further argues that the ALJ failed to develop the record by not obtaining a new medical opinion after her June 7, 2022 left hip surgery. The two state agency physicians issued their opinions in April and December 2021. Subsequent to these opinions, Bouvat underwent a left hip arthroscopy to repair a degenerative tear of the acetabular labrum of the left hip on June 7, 2022, two days prior to the June 9, 2022 hearing before the ALJ. (Tr. 2324–41.) At the beginning of the hearing, Bouvat's counsel represented that the record was complete. (Tr. 49.) However, after the ALJ learned of Bouvat's recent surgery during the course of the hearing, she stated that she would hold the record open for 30 days so that Bouvat could submit any treatment records or information related to her left hip. (Tr. 56.) After the hearing, Bouvat provided records from June 7, 2022, related to her surgery. (Tr. 2244–2341.)

6

Considering all of the evidence, including these most recent records regarding Bouvat's hip surgery, the ALJ stated that in "additional consideration of her left hip surgical repair, the claimant is further limited to occasional operation of foot controls with the left lower extremity." (Tr. 35.)

"While a claimant bears the burden of proving disability, the ALJ in a Social Security hearing has a duty to develop a full and fair record." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). The duty is "enhanced" when a claimant is unrepresented, *id.*, however, it does not go away when the claimant is represented, *Gray v. Astrue*, No. 10 C 1670, 2011 WL 332540, at *5 (N.D. Ill. Jan. 28, 2011) ("This presumption does not, however, eliminate an ALJ's independent duty to reasonably develop the record."). Although having counsel does not absolve the ALJ of their duty to develop the record, "a claimant represented by counsel is presumed to have made his best case before the ALJ." *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007); *see also Nicholson v. Astrue*, 341 F. App'x 248, 253 (7th Cir. 2009) ("Although we acknowledge that the ALJ bears some responsibility for the development of the record, at the same time the ALJ is entitled to assume that a claimant represented by counsel 'is making his strongest case for benefits.' An omission from the record is significant only if it is prejudicial to the claimant.") (internal citations omitted).

The ALJ in this case clearly fulfilled her duty. Despite being represented by counsel, and presumably counsel being aware that her client underwent surgery just two days prior to the hearing, counsel told the ALJ at the beginning of the hearing that she did not object to the exhibits currently in the file and that "the record [wa]s complete." (Tr. 49.) It was not until the ALJ began questioning Bouvat about her current medications that she learned Bouvat was taking pain medication due to a hip surgery two days prior. (Tr. 55–56.) The ALJ stated:

"Counsel, I know you said the record is complete, but I'm not sure I see any treatment or information about this left hip. I'd like to hold the record open for 30 days for you to submit any treatment related to this condition," to which counsel responded, "Okay. That's fine, Your Honor. Thank you." (Tr. 56.) What counsel submitted was treatment records from the day of surgery only—June 7, 2022. (Tr. 2243–2343.) Counsel did not include any follow-up records occurring in that 30-day period after the June 9, 2022 hearing, assuming any exist.

Bouvat further faults the ALJ for failing to obtain a new medical opinion, arguing that her left hip surgery was "indubitably a significant medical issue to be reviewed by a physician." (Pl.'s Reply Br. at 1, Docket # 19.) But an ALJ need only seek an additional medical opinion "if there is potential decisive evidence that postdates the state agency consultant's opinion." *Kemplen v. Saul*, 844 F. App'x 883, 888 (7th Cir. 2021). Bouvat testified that two weeks *prior* to the left hip surgery she was told that she was "on a walker permanently" because of "all the damage that's been done" to her hips, back, and shoulders. (Tr. 56.) When asked whether her doctors intended to reevaluate her need to use a walker after she recovers from the hip surgery, Bouvat testified that she needed to use it "from now on." (Tr. 57.) Thus, it does not appear that the surgery impacted her condition in any significant way. Upon discharge, Bouvat was instructed to start physical therapy "as soon as possible" and to follow up in office in "1 week, sooner should issues arise." (Tr. 2335.) At the very least, if Bouvat followed-up in one week as instructed at discharge, those records would have been available and Bouvat could have included them in her post-hearing submission. But given the dearth of records subsequent to the surgery, I see no "potential decisive evidence" that required an additional expert opinion. Thus, the ALJ did not err on this ground.

## CONCLUSION

Bouvat argues that the ALJ's decision finding her not disabled is contrary to the substantial evidence in the record. For the reasons explained above, I find that the ALJ's decision in this case is well supported by the substantial evidence in the record. The Commissioner's decision is affirmed. The case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 27th day of March, 2024.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge